IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MOHAMMAD OWDETALLAH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. CIV-25-1546-SLP |
| ) | |
| PAMELA BONDI, et al., ) | |
| ) | |
| Respondents. ) | |

**O R D E R**

Before the Court is the Report and Recommendation (R&R) [Doc. No. 15] of United States Magistrate Judge Chris M. Stephens, recommending the Court grant Petitioner's request for habeas relief pursuant to 28 U.S.C. § 2241. Respondents have filed an Objection [Doc. No. 16] to which Petitioner responded [Doc. No. 17], and the matter is at issue.[1] The Court reviews de novo any portion of the R&R to which Respondents have made specific objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Having conducted that review, and for the reasons that follow, the Court ADOPTS the R&R and GRANTS IN PART the Petition.

**I.   Background**

Petitioner, a Palestinian national, lawfully entered the United States over twenty years ago in 2005 on a student visa to attend the Edmond Language Institute in Edmond, Oklahoma. In May 2007, Immigration and Customs Enforcement (ICE) initiated removal

---

[1] Citations to the parties' briefing submissions and record reference the Court's ECF pagination.

proceedings by issuing a Notice to Appear, alleging that he failed to comply with the conditions of his visa because he did not attend the Edmond Language Institute from December 2005 to May 2007 but remained in the country. [Doc. No. 11-1] at 1, 3. The Notice to Appear also alleged that Petitioner was employed for compensation without authorization. *Id.*

On August 15, 2011, Petitioner was ordered removed. That same day, Petitioner withdrew all pending applications for asylum and withholding of removal and waived appeal of his order of removal, making it final. [Doc. No. 11-2]. Following the removal order becoming final, Petitioner was released on an Order of Supervision (OOS). However, as set forth in the R&R, "[n]either party alleges how long Petitioner was in ICE custody before he was released on an OOS." R&R [Doc. No. 15] at 2. The parties have not provided the Court with a copy of the OOS, nor does the record clearly establish the date on which it was issued. Petitioner alleges that he complied with all supervisory conditions. Respondents do not dispute that Petitioner received an OOS nor that he complied with all supervisory conditions.

On December 11, 2025, ICE arrested Petitioner during a regularly scheduled reporting appointment. Petitioner maintains that his re-detention was procedurally defective. He contends that ICE did not provide him with a Notice of Revocation of Release explaining the basis for revoking his supervised release, did not serve him with a Notice of Custody Determination identifying any "changed circumstances" rendering his removal significantly likely in the reasonably foreseeable future, and did not afford him an interview as contemplated by 8 C.F.R. § 241.13(i). Respondents have not produced

2

documentation in this action reflecting a formal revocation notice or an interview conducted in connection with the revocation decision. Respondents assert that Petitioner was arrested in order "to effect his removal." Resp. [Doc. No. 11] at 10.

Regarding removal, Petitioner asserts that he is Palestinian and that removal to Palestine is not feasible because Palestine "no longer exists." The administrative removal order identifies Israel as the country of removal, [Doc. No. 11-2], and ICE records describe him as a native and citizen of Israel. The parties dispute aspects of this characterization, but Respondents do not dispute that Petitioner identifies as Palestinian.[2] The record before the Court does not include evidence that travel documents have been issued or requested, or that any country has agreed to accept Petitioner.

Petitioner filed this habeas action shortly after his re-detention on December 11, 2025. He advances multiple theories of relief. He argues that his detention is unlawful because ICE failed to comply with the regulatory requirements governing revocation of supervised release under 8 C.F.R. § 241.13(i). He further contends that there is no significant likelihood of his removal in the reasonably foreseeable future under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that his continued detention violates due process and the Administrative Procedure Act.

## II.    Discussion

The Magistrate Judge issued a thorough and well-reasoned R&R, concluding that habeas relief should be granted, in part. Specifically, the Magistrate Judge found that ICE

---

[2] The Court agrees with the Magistrate Judge's conclusion that "whether Petitioner is a national of Palestine or Israel is not relevant to the disposition of his claims." R&R [Doc. No. 15] at 2 n.2.

3

failed to abide by its regulations in 8 C.F.R. § 241.13(i) when it revoked Petitioner's OOS without demonstrating there were changed circumstances and a significant likelihood of Petitioner removal in the reasonably foreseeable future before revoking his OOS and detaining him. R&R [Doc. No. 15] at 10. The R&R also found that ICE further violated its regulations by failing to provide Petitioner with an individualized post-detention interview as required by § 241.13(i)(3). *Id.* at 12-13. The R&R recommends the Petition be granted on regulatory grounds without reaching Petitioner's remaining claims.

Respondents object on several grounds. They first argue that the Petition is premature under *Zadvydas* because Petitioner had been detained for only eleven days at the time of filing and had not exceeded the six-month period the Supreme Court described as presumptively reasonable. Obj. [Doc. No. 16] at 5. They contend that the R&R improperly "avoided" this threshold issue. *Id.* at 2. The Court disagrees. Petitioner advances more than one basis for relief. Although one claim invokes *Zadvydas*, he separately challenges the legality of ICE's revocation of his supervised release under § 241.13(i). The R&R concluded that the regulatory violation claim could be resolved on the present record and that, having found a deficiency in the revocation process, it was unnecessary to reach the constitutional question or Petitioner's other claims.

Courts addressing similar arguments have recognized this distinction between claims. In *Misirbekov v. Venegas*, 796 F. Supp. 3d 436 (S.D. Tex. 2025), the court held that the petitioner's claim under *Zadvydas* was premature but nevertheless granted habeas relief for failure to comply with the regulatory custody review procedures implementing § 1231. The court explained that although *Zadvydas* permits continued detention until

4

removal is no longer significantly likely in the reasonably foreseeable future, "the determination required by *Zadvydas* cannot be made if DHS fails to conduct hearings to make such determinations and fails to provide aliens with the procedures due to them under regulations." *Id.* at 440. Detention "may be maintained only upon compliance with applicable process." *Id.* ("Respondents cannot constitutionally detain Petitioner without complying with these safeguards, regardless of whether Petitioner qualifies for release under *Zadvydas*.").

Similarly, in *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025), the Government argued that detention of less than six months was presumptively reasonable under *Zadvydas*. The court rejected that framing, explaining that the Government's argument "missed the mark" as the case was "not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*," but rather about "ICE's authority to *re-detain* [the petitioner] after he was issued a final order of removal, detained, and subsequently released on an [OOS]." *Id.* Because the petitioner challenged ICE's compliance with § 241.13(i), the court analyzed the regulatory issue independently and granted habeas relief despite finding *Zadvydas* "not applicable." *Id.*

Other courts have reached the same conclusion. *See e.g.*, *Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747, 758 (S.D. Tex. 2008) (granting habeas relief for regulatory violations despite rejecting *Zadvydas* claim); *Yee S. v. Bondi*, No. 25-CV-02782 (JMB/DLM), 2025 WL 2879479, at *3 (D. Minn. Oct. 9, 2025) (granting release for violation of § 241.13 and noting the Court need not address the petitioner's "independent challenge to the lawfulness of his detention under *Zadvydas*").

5

Next, and somewhat relatedly, Respondents object to the R&R asserting it did not address "the jurisdictional question." Obj. [Doc. No. 16] at 11. This argument also fails. Federal courts have jurisdiction under 28 U.S.C. § 2241 to review challenges to the lawfulness of immigration detention. *Zadvydas*, 533 U.S. at 687; *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). A claim that ICE failed to comply with binding regulatory requirements governing custody determinations falls squarely within that authority. Whether Petitioner's separate *Zadvydas* claim is ripe does not deprive the Court of jurisdiction to adjudicate the regulatory violation claim, and Respondents provide no applicable, binding authority holding otherwise.[3]

Respondents further object that the R&R improperly shifted the burden to Respondents to prove that removal is reasonably foreseeable. Obj. [Doc. No. 16] at 6. They emphasize that under *Zadvydas*, the noncitizen bears the initial burden of providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Again, that framework governs substantive challenges to the length of an initial detention. *See Hall v. Nessinger*, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *6 (D.R.I. Jan. 2, 2026) ("*Zadvydas* involved ICE's authority to detain *in the first place* upon an issuance of a final order of removal." (internal quotations and citation omitted)).

---

[3] Respondents cite three district court opinions in support of their position—two of which did not have an independent regulatory violation claim at issue. *See Ali v. Barlow*, 446 F. Supp. 2d 604 (E.D. Va. 2006); *Al-Shewaily v. Mukasey*, No. CIV-07-0946-HE, 2007 WL 4480773 (W.D. Okla. Dec. 18, 2007). Respondents additionally point to a recent case from this district wherein the court concluded that the *Zadvydas* claim was premature and declined to grant habeas relief for violation of § 241.13. *See Nguyen v. Bondi*, No. CIV-25-01204-JD, 2025 WL 4114231 (W.D. Okla. Dec. 31, 2025). The Court respectfully disagrees for the reasons discussed herein.

The R&R's analysis turned instead on 8 C.F.R. § 241.13(i), which governs revocation of supervised release. The Court agrees with other courts that have concluded "that the burden-shifting framework from *Zadvydas* does not apply when a noncitizen has been ordered removed, is subsequently released on an order of supervision because the removal order could not be executed, and is then re-detained later." *Phouvieng K. v. Andrews*, No. 1:25-CV-01512-KES-SAB (HC), 2025 WL 3265504, at *4 (E.D. Cal. Nov. 24, 2025) (citing *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025); *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025)); *see also Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025). "These regulations clearly indicate that, upon revocation of supervised release, it is *the Government's* burden to show a significant likelihood that the noncitizen may be removed." *Hall*, 2026 WL 18583, at *7 (gathering cases). The Magistrate Judge correctly assigned the burden to the Respondents.

Next, Respondents take issue with the R&R's repeated observations that Respondents "refus[ed] to provide any factual information" related to the OOS or the possibility of Petitioner's removal. *See* R&R [Doc. No. 15] at 10 ("Respondents do not specify why the OOS was originally issued or even acknowledge that Petitioner was released on an OOS. Nor do they try to rebut Petitioner's allegations that he was previously released because ICE determined there was no significant likelihood of his removal in the reasonably foreseeable future."); *id.* at 10 ("Respondents have provided no sworn declaration by an ICE officer explaining efforts at removal; nor have Respondents even provided vague or conclusory assertions of efforts to remove Petitioner."). Respondents

7

point out that following the filing of the Petition, the Magistrate Judge ordered an expedited response. [Doc. No. 16] at 9. They emphasize that during that time, there were holidays and weekends, apparently implying that either inconvenience or inability prevented them from properly briefing the issues. *Id.* Instead, they contend that Petitioner could have attached the OOS himself. *Id.* This argument is not well-taken.

The regulation requires that, before revoking supervised release, ICE must determine that changed circumstances establish a significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(2). If such a determination was made, the supporting facts were necessarily in ICE's possession at the time of re-detention and remain within its control. Respondents were able to file a written response and attach exhibits (including documents nearly twenty years old) yet did not provide a copy of the OOS or any documentation explaining the basis for revocation or reflecting changed circumstances. Nor did Respondents request additional time to supplement the record. It is difficult to credit the notion that an expedited schedule prevented the Government from producing documents or information contained in its own files—particularly where the regulation places the obligation on the Government to justify re-detention—while expecting Petitioner, who remains unlawfully detained in ICE custody, to produce ICE-generated records.

Finally, Respondents object to the R&R on the grounds that the regulatory violation is not a reason to grant habeas relief because the harmless error standard applies.[4] Obj.

---

[4] Respondents provide no analysis applicable to the present case to support their theory that any regulatory violation is mere "harmless error." They rely heavily on a decision from this district

[Doc. No. 16] at 9-12. The Court disagrees. "[T]here are, for present purposes, two types of regulations: (1) those that protect fundamental due process rights, and (2) those that do not." *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). While the second type "only implicates due process concerns when the failure to comply with the regulation causes prejudice," a violation of the first type of regulation "implicates due process concerns even without a prejudice inquiry." *Id.* (holding that because an immigration officer's violation of DHS regulation requiring the noncitizen to be advised of the charge against him "constituted a denial of [the noncitizen's] right to notice and an opportunity to respond, no showing of prejudice [was] necessary to establish a due process violation"). Other circuits, including the Tenth Circuit,[5] have held similarly. *See e.g.*, *Barrie v. F.A.A.*, 16 F. App'x 930, 934 (10th Cir. 2001) (unpublished) (explaining the Supreme Court's opinion in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) stands for the proposition that an agency must adhere to its own rules and regulations when an individual's due process interests are implicated and noting the

---

without acknowledging the Magistrate Judge's correct conclusion that the cited case presents materially different facts. *See Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932 (W.D. Okla. Oct. 31, 2025) (finding harmless error where the Government "substantially" complied with the regulations because petitioner was interviewed and provided reasons for his detention, giving petitioner an opportunity to make "robust argument against his detention").

[5] The Tenth Circuit has recently suggested its own form of bucketing "types" of regulations when considering the violation of those regulations for purposes of a procedural claim. *Wright-Smith v. Fed. Aviation Administration*, No. 23-9608, 2024 WL 5183255, at *4 (10th Cir. Dec. 20, 2024) ("In considering a procedural claim, we ask whether 'the procedures in question were designed to protect the [rights of the petitioner]' or were 'designed to promote some other agency goal.'").

9

"*Accardi* holding applies to regulations that exist to protect the rights of those regulated by the agency"); *Gov't of Canal Zone v. Brooks*, 427 F.2d 346, 347 (5th Cir. 1970) ("It is equally well established that it is a denial of due process for any government agency to fail to follow its own regulations providing for procedural safeguards to persons involved in adjudicative processes before it.").

Here, the regulations under 8 C.F.R. § 241.13 properly belong in the "first type" of regulation that protects fundamental due process rights. This is evident from the regulations themselves, which were promulgated to implement the newly established constitutional constraints after the Supreme Court decided *Zadvydas*. *See* 8 C.F.R. § 241.13; 66 Fed. Reg. 56967, 56969 (Nov. 21, 2001) (explaining the *Zadvydas* decision and stating that the new regulations were issued to provide a process for DHS to determine whether there is a significant likelihood of removal in the reasonably foreseeable future). "The review process contemplated by the regulations is a meaningful individualized review, as the interest involved is the 'most elemental of liberty interests—the interest in being free from physical detention.'" *Bonitto*, 547 F. Supp. at 758 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "There can be little argument that ICE's requirement that noncitizens be afforded an informal interview . . . derives from the fundamental constitutional guarantee of due process." *Ceesay v. Kurzdofer*, 781 F. Supp. 3d 137, 165 n.26 (W.D.N.Y. May 2, 2025).

Accordingly, Respondents' regulatory violation "implicates due process concerns even without a prejudice inquiry." *Raya-Vaca*, 771 F.3d at 1205; *see also Gevorgyan v. Noem*, No. 5:25-CV-03408-SRM-ADS, 2026 WL 20902, at *4 (C.D. Cal. Jan. 1, 2026)

("Because these regulations were promulgated to protect fundamental due process rights afforded to released noncitizens who have been ordered removed, ICE's failure to follow such regulations violates due process, even in the absence of prejudice to the noncitizen."). However, even assuming that a showing of prejudice were required in this context,[6] the Court agrees with the reasoning of another district court that a prejudice inquiry would be satisfied in this context where ICE failed to comply with its own regulations. *See Kerota v. Noem*, No. 3:26-CV-00140-RBM-BLM, 2026 WL 183858, at *4 (S.D. Cal. Jan. 23, 2026). Accordingly, the Court concludes that habeas relief is warranted and release is appropriate under 28 U.S.C. § 2241(c)(3).[7]

---

[6] In *Bahadorani*, the court noted that the harmless error standard applies in deportation cases. 2025 WL 3048932, at *2 (W.D. Okla. Oct. 31, 2025) (citing *Nazaraghaie v. I.N.S.*, 102 F.3d 460, 465 (10th Cir. 1996)). In *Nazaraghaie*, a noncitizen petitioned for writ of habeas corpus to challenge Board of Immigration Appeals (BIA) decision denying his application for asylum and withholding of deportation. He argued that "the BIA violated his due process rights by not considering the entire record." *Id.* The Tenth Circuit rejected this argument noting that the BIA's eligibility determination was supported by evidence and weighing certain evidence "fully" would not have resulted in a different outcome, making any defect nothing more than harmless error. *Id.* Thus, while a prejudice inquiry may reach to circumstances such as Petitioner's, the Court notes several recent opinions by the Tenth Circuit have applied the *Accardi* doctrine, albeit in different circumstances than habeas relief, and one such opinion specifically "reserve[s] the ability to consider" whether prejudice is required in light of "divergent views" from various circuits. *See Wright-Smith v. Fed. Aviation Administration*, No. 23-9608, 2024 WL 5183255, at *3 (10th Cir. Dec. 20, 2024). Ultimately, even if prejudice were required, the Court is satisfied that Petitioner has been prejudiced upon review of the record.

[7] *See also Nguyen v. Bondi*, No. CIV-25-1402-D, 2026 WL 396548 (W.D. Okla. Feb. 12, 2026) (granting habeas relief where ICE's failure to abide by its own regulations in making the decision to revoke Petitioner's OOS rendered the revocation unlawful); *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025) (failure to demonstrate changed circumstances justifying re-detention, as required by § 241.13(i)(2), amounts to a due process violation, entitling the petitioner to habeas relief); *Hamidi v. Bondi*, No. CIV-25-1205-G, Doc. No. 19, at 9 (W.D. Okla. Dec. 1, 2025) (granting habeas relief where the respondents failed to satisfy § 241.13(i)(2)); *Qui v. Carter*, No. 25-CIV-3131-JWL, 2025 WL 2770502, at *4-5 (D. Kan. Sept. 26, 2025) (finding a failure to establish changed circumstances under § 241.13(i)(2) renders

11

**III.     Conclusion**

IT IS THEREFORE ORDERED as follows:

1. The Court ADOPTS the Report and Recommendation [Doc. No. 15] to the extent that the failure to adhere to 8 C.F.R. § 241.13 compels habeas relief under the circumstances of this case and GRANTS the Petition for Writ of Habeas Corpus [Doc. No. 1] to the extent it seeks habeas relief pursuant to 28 U.S.C. § 2241.  Petitioner's remaining claims and requests for relief are DISMISSED WITHOUT PREJUDICE.

2. The Court ORDERS that Petitioner be released from custody immediately, subject to the terms of his previous Order of Supervision.

3. The Court DIRECTS Respondents to submit a declaration, pursuant to 28 U.S.C. § 1746, within 5 days of the date of this Order confirming Petitioner's release from custody.

IT IS SO ORDERED this 20th day of February, 2026.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

the revocation of release ineffective, entitling the petitioner to release); *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *2–3 (D. Kan. June 17, 2025) (same).